UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA COPENHAVER NELSON,

    Plaintiff,                         Case No. 16-10405
                                        Honorable Thomas L. Ludington
v.                                  Magistrate Judge Elizabeth A. Stafford

LISA A. WALSH *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS WALSH AND LaCROIX'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT [ECF No. 22], TO DENY PLAINTIFF'S MOTION TO AMEND COMPLAINT [ECF No. 35], AND TO DENY PLAINTIFF'S MOTION FOR <u>DEFAULT JUDGMENT [ECF No. 31]</u>**

**I.    INTRODUCTION**

Plaintiff Joshua Nelson, a prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 arising out of his incarceration at Macomb Correctional Facility.[1] [ECF No. 8]. Defendants Lisa Walsh and Janine LaCroix have filed a motion to dismiss, or in the alternative, a motion for summary judgment pursuant to Federal Rules of Civil Procedure 12 and 56(a).[2] [ECF No. 22]. Also pending before the Court are Nelson's

---

[1] The Honorable Thomas L. Ludington referred this for all pretrial matters. [ECF No. 13].
[2] Jon Pavitt, another MDOC defendant, has filed a separate motion for summary judgment. [ECF No. 36].

1

motion for default judgment against Defendant Jon Pavitt, and his motion to amend count one of his complaint. [ECF Nos. 31, 35]. For the following reasons, the Court **RECOMMENDS** that Walsh and LaCroix's motion to dismiss and/or for summary judgment [ECF No. 22] be **GRANTED**, and that Nelson's motions be **DENIED**.

**II.   BACKGROUND**

According to the amended complaint, Nelson asserts that Assistant Resident Unit Supervisor (ARUS) Walsh refused to separate him from known gang member Harlem Marshbanks, with whom he was housed, and compromised the confidentiality of his concerns regarding the threats from Marshbanks. [ECF No. 8, PageID 95-96]. Nelson alleges that Walsh took this action against him because he is gay. [*Id.*, PgID 96].

Specifically, Nelson claims that, on September 10, 2015, he reported to Walsh that Marshbanks was rumored to be threatening to sexually abuse him, and Walsh responded, "deal with it the best way you can, Mr. Copenhaver[3] . . . make sure you have a golden day. . . ." [*Id.*, PageID 95]. Nelson states that Walsh refused to separate him from Marshbanks and indicated that he was "appropriately placed." [*Id.* at 96]. Nelson alleges

---

[3] The complaint names "Joshua Copenhaver Nelson" as the plaintiff, [ECF No. 8, PageID 93], but defendants refer to him as "Joshua Copenhaver, aka Joshua Nelson." [ECF No. 22, PageID 210].

that he reported his concerns to two corrections officers who in turn informed a supervisor of the issue. [*Id.*, PageID 96]. The supervisor forwarded the information to the Prison Rape Elimination Act (PREA) coordinator and to Walsh, who replied that she would investigate but that she "had no idea why Plaintiff would make such a statement to staff." [*Id.*].

Nelson alleges that, afterwards, Walsh had him brought to her office and, with deliberateness and intent to cause him harm, stated "in direct and proximate distance of other offenders" that Nelson "'snitched on her to supervisory staff about dealing with [his] PREA claim." [ECF No. 8, PageID 96]. He alleges that Walsh then stated that his motivation was to be separated from Marshbanks so that he could sneak someone into his cell to do "whatever you people do." According to Walsh, Nelson and Marchbanks were separated on September 10, 2015, but because Marchbanks had complained about sharing a cell with a homosexual, not because of Nelson's concerns. [*Id.*, ECF No. 22-5, PageID 334].

According to Nelson, Walsh investigated to determine whether he had a valid kosher meal accommodation, and then prepared a transfer packet in December 2015 to have him transferred to a non-kosher facility. [ECF No. 8, PageID 98-99; ECF No. 23, PageID 375]. Nelson alleges that this transfer went forward despite Walsh being aware that he is Jewish, and

3

in retaliation for the exercise of his First Amendment rights to file grievances and a claim under PREA. [ECF No. 8, PageID 98-99; ECF No. 23, PageID 375]. He alleges that Walsh's actions in transferring her to the facility without kosher food also violated his equal protection, Religious Freedom Restoration Act (RFRA) and the Religious Land Use and Institution Persons Act (RLUIPA) rights, and inflicted punishment in violation of the Eighth Amendment. [ECF No. 8, PageID 98-99, 101-02].[4]

Nelson claims that, in a separate incident, defendant LaCroix, who is a Business Manager for the MDOC, violated his constitutional rights by denying him access to the courts. [ECF No. 8, PageID 100]. He asserts that he filed a state habeas corpus petition with the Macomb County Circuit Court, and was ordered by the court to pay the initial filing fee of $35.00 to proceed with his adjudication. [ECF No. 8, PageID 100]. According to Nelson, LaCroix provided him with a financial statement that misrepresented the amount of funds he had in his trust account, and then failed to create a debt obligation to take care of the filing fee, which resulted

---

[4] In his response to Walsh's and LaCroix's motion, Nelson adds a claim of conspiracy to deprive him of his civil rights under 42 U.S.C. § 1985. [ECF No. 23, PageID 363-65]. But in his complaint, he makes a single reference to § 1985 in the introduction, but provides no allegations to support such a claim anywhere else in the complaint. Nelson may not amend his complaint through a response brief. *Jocham v. Tuscola County*, 239 F.Supp.2d 714, 732 (E.D. Mich. 2003).

in the dismissal of the court action. [Id.]. These actions, he alleges, violated his right to access to the courts. [*Id.*].

## III. ANALYSIS

A motion to dismiss pursuant to Rule 12(b)(6) tests a complaint's legal sufficiency. Although the federal rules only require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *see* Federal Rule of Civil Procedure 8(a)(2), the statement of the claim must be plausible. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly,* 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Id.*; *see also Erickson v. Pardus,* 551 U.S. 89, 94 (2007). While pleadings filed by *pro se*

litigants are entitled to a more liberal reading, *Thomas v. Eby,* 481 F.3d 434, 437 (6th Cir. 2007), "[t]he leniency granted to pro se [litigants] ... is not boundless." *Martin v. Overton,* 391 F.3d 710, 714 (6th Cir. 2004). Such complaints must still plead a plausible claim for relief. *Davis v. Prison Health Servs.,* 679 F.3d 433, 437-38 (6th Cir. 2012).

Rule 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324. "The failure to present any evidence to counter a well-supported motion for summary judgment

6

alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.

When feasible, the Court will decide exhaustion disputes before addressing the merits of the claims. *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). A dismissal for failure to exhaust administrative remedies, even when decided on summary judgment, is without prejudice. *Boyd v. Corr. Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2004).

### A.

The Prison Litigation Reform Act ("PLRA") requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007).

Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (citation omitted) (emphasis in original). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," but it is self-evident that an untimely or otherwise improperly filed grievance does not fulfill the exhaustion requirement. *Id.*; *see also Woodford,* 548 U.S. at 97. Finding otherwise "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford,* 548 U.S. at 97. However, before a civil rights claim based on a grievance may be dismissed for failure to properly exhaust, prison officials must "clearly reject[] a grievance for a reason *explicitly* set forth in the applicable grievance procedure." *Burnett v. Howard*, No. 2:09-cv-37, 2010 WL 1286256, at *3 (W.D. Mich. Mar. 30, 2010) (emphasis added).

MDOC Policy Directive 03.02.130 sets forth a three-step procedure

prisoners must follow in order to complete the administrative review process and properly exhaust grievances. A prisoner must attempt to informally resolve the problem with the allegedly offending staff, and then may file a Step I grievance regarding any unresolved issues with a grievance coordinator. MDOC Policy Directive 03.02.130, ¶ P and R (effective July 9, 2007).[5] The prisoner may then file a Step II grievance appeal within ten days of receiving the Step I response or, if no response was received, within ten business days after the date the response was due. *Id.* at ¶ BB. The same schedule applies to a Step III appeal – it is due within ten business days of receiving the Step II response or, if no response was received, within ten business days after the date the response was due. *Id*. at ¶ FF. Prisoners must appeal their grievances through Step III and wait until receipt of a Step III response, or until the response is past due, before filing suit.

Nelson filed twelve Step III grievances, and only two pertain to the defendants listed in the instant motion. [ECF No. 22-3, PageID 246-50]. Defendants concede that Nelson exhausted grievance MRF-15-03-0426-01z in regard to LaCroix's failure to process his request for a court filing fee

---

[5] The Policy Directive is available at:
https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf

9

on February 25, 2015. [ECF No. 22, PgID 221; ECF No. 22-3, PageID 316-20]. But they state that Nelson did not exhaust his claim that LaCroix provided him with an inaccurate prisoner account statement. [ECF No. 22, PageID 229]. Nelson did not respond to this argument, and the Court agrees that Nelson's grievance did not address the alleged misrepresentation on the account statement in his grievance.[6]

This leaves Grievance MRF-15-09-1748-28b, in which Nelson stated that on September 10, 2015, at about 2:30 p.m., ARUS Walsh called him into her office to question why he "made contact with the yard sergeant regarding her refusal to move Offender Marshbanks form the cell." [ECF No. 8, PageID 107-10]. The grievance stated that Marshbanks was a 20-year-old known gang member, while he (Nelson) was a middle-aged, gay and Jewish man. [*Id.,* PageID 109]. Nelson stated that gang members usually harm their gay cellmates so that they can be moved. [*Id.*]. He also complained that Walsh accused him of wanting Marshbanks moved so that he could sneak someone into his cell. [*Id.*].

This grievance was rejected at STEP I for being too vague and

---

[6] Furthermore, Nelson's claim against LaCroix for misrepresenting the amount he had in his trust account does not implicate the "access to the courts" jurisprudence, which prohibits prison officials "from actively interfering with inmates' attempts to prepare legal documents." *Lewis v. Casey*, 518 U.S. 343, 350 (1996).

illegible. [ECF No. 8, PageID 109-10]. The rejection was appealed at Steps II and III, and upheld at both steps. [*Id.*, PageID 108; ECF No. 22-3. PageID 252]. Defendants argue that because the grievance was rejected pursuant to MDOC's grievance procedure, the grievance was not exhausted. They cite *Burnett v. Howard*, No. 09–37, 2010 WL 1286256, *1 (W.D.Mich. Mar. 30, 2010), which held, "As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." (citation and internal quotation marks omitted.) [ECF No. 8, PageID 109-10.]. But Nelson argues that his grievance met the level of detail required and was improperly rejected. The Court agrees.

When completing a grievance, prisoners are required to concisely state the issues they are alleging and include the "[d]ates, times, places, and names of all those involved in the issue being grieved." 03.02.130 at ¶ R. "Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)." *Id.* (emphasis in original). It is true that a grievance may be rejected if it is vague or illegible. *Id.* at ¶ G(1). But the Court does not find that Nelson's grievance was illegible, and defendants have not explained how it was vague. It provided

11

the date, time, place, and names of those involved, as required by ¶ R. This raises a question of fact, as an improper rejection would constitute exhaustion. *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016). The burden is on the defendants to "show that every reasonable jury would think the rejections were proper." *Id*. Under similar circumstances to this case, the court in *Wayne v. Heyns*, No. 13-14495, 2015 WL 736329, at *6 (E.D. Mich. Feb. 20, 2015), rejected the MDOC defendants reliance on *Burnett*. "The Court cannot discern what more Plaintiff could have done to comply with PD 03.02.130 . . . . Therefore, even though the MDOC rejected Plaintiff's Step I grievance as vague, the undersigned finds that Plaintiff's efforts to exhaust his administrative remedies were sufficient under the circumstances." *Id.* The Court agrees and applies that holding here.

For these reasons, except for the allegation that LaCroix misrepresented the amount that Nelson had in his account, his claims against these defendants should be found to have been sufficiently exhausted.

**B.**

The PREA was enacted to address the issue of rape in prisons, authorize grant money, and conduct studies to evaluate these issues.

*Peterson v. Burris*, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016). But PREA did not create a private cause of action. *Id.* Nelson's PREA claim should therefore be dismissed.

### C.

In order to prevail against the defendants, Nelson must prove their personal involvement in the alleged unconstitutional activity. *Palmer v. Lane*, 22 F. App'x 532, 533 (6th Cir. 2001). Nelson alleges that Walsh retaliated against him, violated his equal protection rights, violated his free exercise of religion and inflicted punishment in violation of the Eighth Amendment by transferring him to a prison without kosher food. [ECF No. 8, PageID 98-99, 101-02]. He relies on allegations that Walsh threatened him by stating, "I will show you how things are done here . . . You are just an inmate . . . One of those creatures who is a poor representation of my Lord," and "I told you that I would show you how things are done . . . Enjoy my little trip for you . . . Have a golden life." [ECF No. 23, PageID 375 (ellipses in original)]. But Walsh asserts that by affidavit[7] that Nelson

---

[7] Nelson asserts that this and LaCroix's affidavits are insufficient because they are not signed under penalty of perjury. But the opinion he cites in support referred to a report that was neither sworn nor made under penalty of perjury; the court did not say that a sworn affidavit was insufficient. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n. 1 (6th Cir. 2010). Here, the affidavits were sworn and notarized. [ECF No. 22-5, PageID 336; ECF No. 22-7, PageID 345]. This is sufficient.

requested a transfer and that she had no personal involvement in the decision as to where to send Nelson. [ECF No. 22-5, PageID 335]. Emails attached to her affidavit show that Nelson wished for a level I transfer and had opted out of the Aleph Institute Jewish Program.[8] [*Id.*, PageID 338].

Nelson confirms that he contacted the deputy warden to sign out of the Aleph Institute Jewish Program, [ECF No. 23, PageID 375], and he does not show that he had otherwise notified MDOC that he wished to continue his participation in the kosher meal program. He does not dispute that he requested a transfer, and he provides no proof that Walsh was involved in deciding where he would be transferred. Thus, he has presented insufficient evidence that Walsh was personally involved or responsible for his transfer to a prison that did not provide kosher food, and summary judgment of his claims related to that transfer should be granted.

Nelson's RFRA and RLUIPA claims against Walsh rely upon the same allegations that she had him transferred to a facility that did not serve Kosher food. The Court recommends *sua sponte* dismissing these claims for same reasons that summary judgment of his constitutional claims against Walsh should be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B) and

---

[8] The Aleph Institute assists Jewish prisoners with, among other things, kosher food issues. *See* http://www.aleph-institute.org/prisoner-services.html

14

1915A(b); *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997).

### D.

Nelson also has not adduced evidence to show that LaCroix was personally involved or responsible for the filing fee not being paid to the Macomb County Circuit Court. In her sworn affidavit, LaCroix states that she is an administrative manager in the business office of Macomb Correctional Facility. [ECF No. 22-7, PageID 343]. Responding to Nelson's allegations, she asserts, "I was not personally involved in this transaction. All requests received at MCF for filing fees are forwarded to the Regional Business Office in Jackson and the Court Order processing technician there processes the request." [ECF No. 22-7, PageID 344]. Nelson cites an MDOC directive as requiring LaCroix to contact the Region III Administrative Officer to create a debt obligation for the filing fee. [ECF No. 8, PageID 100, citing MDOC Policy Directive 40.02.107(L), ECF No. 22-7, PageID 350]. But the paragraph of the directive he cites creates responsibilities on the part of the Region III Administrative Officer or designee; it does not refer to obligations of an administrative manager of a facility. [ECF No. 22-7, PageID 350]. Nelson also states in an affidavit that "despite a conversation" with LaCroix, he was "denied access to the

15

courts," [ECF No. 8, PageID 134], but he provides no details whatsoever about that conversation, and specifically nothing to rebut her assertion that she had no personal involvement in the transaction at issue. Summary judgment of Nelson's access to the court claim should be granted.

### E.

Since Nelson has not established that LaCroix and Walsh have violated his constitutional rights, they are entitled to qualified immunity. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) (qualified immunity applies when defendant has not violated a clearly established constitutional right).

### F.

Nelson has moved for default judgment as to Defendant Jon K. Pavitt because he "has not pled or appeared to assert an affirmative defense to the allegations." [ECF No. 31, PageID 412]. But the usual procedural rules for answering complaints do not apply in § 1983 actions. *Jones v. Bock*, 549 U.S. 199, 200 (2007). Pursuant to 42 U.S.C. § 1997e(g)(1), a defendant may waive the right to reply to an action brought by a prisoner under § 1983, and such waiver does not constitute an admission of the allegations pleaded in the complaint. In such cases "[n]o relief shall be granted to the plaintiff unless a reply has been filed" by the defendant. §

1997e(g)(1). And Pavitt has responded by Nelson's complaint by filing a motion for summary judgment. [ECF No. 36]. Nelson's motion for default judgment should therefore be denied.

### G.

Lastly, Nelson filed a "Motion to Amend Count 1 of Amended Complaint," [ECF No. 35]. In it, he asks only to have his PREA claims asserted under the Eighth Amendment instead. [*Id.*]. Nelson did not attach a proposed amended complaint to his motion, in violation of the Court's local rules. "A party who moves to amend a pleading shall attach the proposed amended pleading to the motion. Any amendment to a pleading . . . must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." E.D. Mich. LR 15.1.

More importantly, Nelson's proposed amended complaint is futile because he has not alleged that he suffered a physical injury or sexual act as a result of Walsh's treatment of his request to be separated from with inmate Marshbanks. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e).

*See also Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011). Since the amended complaint would be futile, it should be denied. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)

## IV. CONCLUSION

For the foregoing reasons, Walsh and LaCroix's motion to dismiss and/or for summary judgment [ECF No. 22] should be **GRANTED**, and Nelson's motions [ECF Nos. 31, 35] should be **DENIED**.

                                        s/Elizabeth A. Stafford_____
                                        ELIZABETH A. STAFFORD
                                        United States Magistrate Judge

Dated: February 17, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 17, 2017.

                        s/Marlena Williams
                        MARLENA WILLIAMS
                        Case Manager